UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ALBERT RAMOS,<br><br>        Plaintiff,<br><br>    v.<br><br>NAVIENT CORPORATION et al.,<br><br>        Defendants. | Case No. 2:26-cv-02607-SB-MAR<br><br><br>ORDER DENYING PLAINTIFF'S MOTION TO REMAND [DKT. NO. 18] AND DEFENDANTS' MOTION TO DISMISS [DKT. NO. 13] |

Plaintiff Albert Ramos filed this case in state court, alleging that Defendants Navient Corporation and Navient Solutions, LLC violated California law in servicing his private student loans and reporting those loans to consumer credit agencies. Defendants removed based on diversity jurisdiction and move to dismiss. Plaintiff moves to remand. The Court held a hearing on May 29, 2026, and now denies both motions.

I.

Plaintiff filed this action in Ventura County Superior Court in December 2025, alleging that Defendants, which he describes together as Navient,[1]

---

[1] In their Rule 12(b)(6) motion, Defendants argue that Navient Corporation is not a proper defendant because it is a holding company that does not engage in student loan servicing. Dkt. No. 13 at 15–16. This argument is based on factual assertions not contained in the complaint and does not support dismissal on a pleading challenge. Plaintiff represents that he has repeatedly requested information from Defendants about which entity owns the loans and that Defendants have not provided it. The parties are ordered to meet and confer promptly in person or by videoconference to seek agreement as to whether Navient Corporation is a proper party. Before the meeting, Defendants shall provide Plaintiff the evidence they contend establishes that Navient Corporation is not involved in the conduct alleged in the complaint. No later than June 8, 2026, the parties shall file either a stipulation to dismiss the claims against Navient Corporation or, if Plaintiff still

1

unlawfully serviced three private student loans he took out to attend the Art Institute of California (AIOC).  He alleges that AIOC induced him to enroll in a bachelor's degree program and to secure loans through a series of misrepresentations about the program and his employment prospects that the Department of Justice has since deemed fraudulent.  Dkt. No. 1, Ex. A ¶¶ 37–47 (Compl.).  Plaintiff secured a mix of public and private loans.  *Id.* ¶ 53.  Navient is the successor to the entity from which Plaintiff secured three private loans.  *Id.* ¶¶ 10–11, 48, 63.  Navient created a process that allows debtors to apply to have their loans discharged based on their schools' misconduct.  *Id.* ¶ 72.  Plaintiff applied for discharge, providing extensive documentation about AIOC's fraud, but his applications—one to Navient and one to another entity that briefly acted as a subservicer to two of the loans—were denied without explanation.  *Id.* ¶¶ 67–82.  Throughout this period, Navient continued its collection efforts, placing more than 45 calls to Plaintiff in a single month, contacting his employer on multiple occasions, leaving voicemails for third parties, and sending collection letters to Plaintiff's deceased mother.  *Id.* ¶¶ 88–94.  Navient also reported the loans to credit bureaus without any dispute notation, despite Plaintiff's repeated written disputes challenging the enforceability of the loans.  *Id.* ¶¶ 19–20.

The complaint asserts claims against Navient Corporation and Navient Solutions, LLC under California's Student Borrower Bill of Rights (SBBR), the Private Student Loan Collections Reform Act (PSLCRA), the Rosenthal Fair Debt Collection Practices Act (Rosenthal Act), the Consumer Credit Reporting Agencies Act (CCRAA), and the Unfair Competition Law (UCL).  Plaintiff seeks damages, restitution, a declaration that his debt was induced by fraud and unenforceable, and a "public injunction" to prohibit Navient from engaging in various "unfair student loan servicing conduct."  Compl. ¶ 4.

Defendants removed the case on March 11, 2026, invoking diversity jurisdiction.  Dkt. No. 1 ¶¶ 1–2.  Defendants then moved to dismiss Plaintiff's claims (except those under the PSLCRA), and Plaintiff moved to remand.

## II.

Plaintiff moves to remand the case in full or, in the alternative, for a partial remand of only his UCL and SBBR claims—the claims in which he seeks a public injunction.  Dkt. No. 18.  He argues that remand is required because the Court

---

believes he has a basis to pursue his claims against Navient Corporation, a joint status report setting forth their respective positions.

2

lacks equitable jurisdiction over his request for a public injunction, and that Defendants have taken inconsistent positions by removing the case and moving to dismiss some of Plaintiff's claims based on lack of standing.

## A.

Federal courts are courts of limited jurisdiction.  Subject-matter jurisdiction refers to a court's power to hear a case, while equitable jurisdiction concerns the propriety of awarding a particular type of remedy.  *Guzman v. Polaris Indus., Inc.*, 49 F.4th 1308, 1314 (9th Cir. 2022).  To remove an action, a defendant "must demonstrate that original subject-matter jurisdiction lies in the federal courts." *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 33 (2002).

Subject-matter jurisdiction exists where there is complete diversity of citizenship and an amount in controversy exceeding $75,000.  28 U.S.C. § 1332(a). Another "necessary component" of subject-matter jurisdiction is Article III standing, which requires a showing that:  (1) the plaintiff has suffered an injury in fact that is concrete and particularized and actual or imminent; (2) the injury is fairly traceable to the defendant's challenged actions; and (3) it is likely that the injury will be redressed by a favorable decision.  *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000).  Standing "is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).

## B.

Plaintiff does not dispute that Defendants have established diversity jurisdiction based on the allegations in the notice of removal; the parties are undisputedly diverse, and the amount in controversy exceeds $75,000.  Dkt. No. 1 ¶¶ 2–3.  Plaintiff argues, however, that remand is required because (1) Defendants' argument that Plaintiff lacks standing to obtain a public injunction prevents them from meeting their burden of establishing subject-matter jurisdiction, and (2) the Court lacks equitable jurisdiction.

## 1.

Plaintiff argues that Defendants' position that his request for a public injunction should be dismissed for lack of Article III standing necessarily precludes them from establishing federal jurisdiction.  This argument is meritless. It is undisputed that an Article III case or controversy exists as to each of

Plaintiff's claims and most of his asserted remedies,[2] and "the presence of at least some claims over which the district court has original jurisdiction is sufficient to allow removal of an entire case, even if others of the claims alleged are beyond the district court's power to decide." *Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997, 1002–03 (9th Cir. 2001). Moreover, the possible "lack of [standing for] injunctive relief does not equate to the lack of subject matter jurisdiction over the underlying claim." *Cabral v. Supple, LLC*, No. 12-CV-00085-MWF, 2016 WL 1180143, at *3 (C.D. Cal. Mar. 24, 2016) (denying motion to remand because court had original jurisdiction over all of plaintiff's claims and "[t]he fact that Article III prohibits Plaintiff from obtaining a certain type of remedy . . . does not detract from that conclusion"). Thus, there is nothing inconsistent in Defendants' positions that the Court has subject-matter jurisdiction over the case but that Plaintiff lacks standing to seek a public injunction. Plaintiff's invocation of judicial estoppel likewise fails because it is predicated on the faulty assertion that these positions are clearly inconsistent.

In sum, Plaintiff seeks multiple forms of relief, including damages and restitution under the SBBR, PSLCRA, Rosenthal Act, and UCL. There is no dispute that Plaintiff has standing to pursue his claims and most of his requested remedies. The parties are diverse, and the jurisdictional threshold is met. This Court plainly has subject-matter jurisdiction.

2.

Plaintiff further argues that, irrespective of Article III standing, the Court lacks equitable jurisdiction to grant his requested injunctive relief and therefore should remand the case as a matter of comity and federal-state relations. *See*

---

[2] Even as to the injunction, Defendants do not meaningfully dispute that Plaintiff has standing to seek injunctive relief for himself. To seek injunctive relief, a plaintiff must "demonstrate a real and immediate threat of repeated injury in the future." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (cleaned up). Plaintiff seeks to enjoin Defendants from engaging in unfair student loan servicing practices, and he alleges ongoing harm: harassing collection calls and the continued denial of his discharge application. Although Plaintiff strategically avoids arguing in support of his own standing, neither party plausibly shows that Plaintiff wholly lacks standing to seek injunctive relief. Instead, the dispute appears to be over the appropriate scope of that remedy. That dispute does not implicate the Court's subject-matter jurisdiction. *Guzman*, 49 F.4th at 1314 (distinguishing between subject-matter and equitable jurisdiction).

4

*Schlesinger v. Councilman*, 420 U.S. 738, 754 (1975) ("the question of equitable jurisdiction" concerns whether, "consistently with the principles governing equitable relief[,] the court may exercise its remedial powers").

The parties focus on what the Court should do if it lacks jurisdiction to issue the injunction sought, but neither side meaningfully addresses the threshold issue of whether the Court in fact has equitable jurisdiction over Plaintiff's requests for injunctive relief. Plaintiff seeks to require Defendants to (1) conduct good-faith evaluations of borrower claims of school misconduct, (2) implement policies to ensure that they provide timely and complete responses to borrowers, and (3) implement policies to prevent harassing and abusive telephone calls and other debt collection practices. Dkt. No. 1 ¶ 21. The parties label Plaintiff's request as one for a "public injunction," which is a creature of California law that "has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public." *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 951 (2017) (cleaned up). It is unclear whether Plaintiff's requested relief meets this definition, given that Plaintiff brings suit based on a private dispute over the servicing of his loans and would benefit from the requested injunction prohibiting Defendants from continuing the harassing conduct and requiring further evaluation of his request to discharge more than $100,000 in debt. *See Blair v. Rent-A-Center, Inc.*, 928 F.3d 819, 824 (9th Cir. 2019) (explaining that public injunctions "benefit the public directly by the elimination of deceptive practices, but do not otherwise benefit the plaintiff, who has already been injured, allegedly, by such practices and is aware of them") (cleaned up); *Broughton v. Cigna Healthplans*, 21 Cal. 4th 1066, 1080 & n.5 (1999) (explaining that the purpose of a public injunction "is not to resolve a private dispute but to remedy a public wrong" and recognizing that private injunctions may have effects beyond the parties).

Assuming the Court lacks equitable jurisdiction to grant at least some of Plaintiff's requested relief, federal courts still "have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996). Because the Court indisputably has subject-matter jurisdiction over this action, wholesale remand of the case is not permitted. *See Lee*, 260 F.3d at 1002 ("[A] district court may not under § 1447(c) remand a case in its entirety where there is subject matter jurisdiction over some portion of it."). And nothing in the remand statute purports to authorize the remand of individual claims or remedies. *See* 28 U.S.C. § 1447(c) (setting forth conditions for remand of "cases"); *see also Fuentes v. Dish Network, LLC*, No. 23-15865, 2024 WL 4234486, at *2 (9th Cir. Sept. 19, 2024) (affirming denial of plaintiff's request for a partial remand of request for public injunction because it improperly

5

sought remand of a remedy and "a portion of a claim").  Plaintiff identifies no binding authority permitting—let alone requiring—remand under these circumstances, where the Court undisputedly has both subject-matter and equitable jurisdiction over every claim in Plaintiff's complaint and most of the remedies he seeks.  *Cf. Ruiz v. Bradford Exch., Ltd.*, 153 F.4th 907, 913 (9th Cir. 2025) (holding that a district court that lacks equitable jurisdiction over the entirety of a removed case has authority to remand).

Plaintiff relies heavily on a recent district court decision remanding a similar action brought by Plaintiff's counsel against Navient, in which the court concluded that "depriving Plaintiff of an unwaivable right based in California state public policy"—i.e., a claim for public injunctive relief—"would be an affront to the delicate balance of federal-state relations."  *Albanese v. Navient Corp.*, No. 8:25-CV-02579-DOC, 2026 WL 970228, at *3 (C.D. Cal. Apr. 10, 2026).  The Court declines to follow *Albanese* for several reasons.  First, it did not address the Ninth Circuit's decisions in *Lee* and *Fuentes*.  Second, it relied principally on *Clevenger v. Welch Foods Inc.*, No. 23-CV-00127-CJC, 2023 WL 2390630 (C.D. Cal. Mar. 7, 2023), stating that "in [*Clevenger*] the Court remanded the entire matter back to state court after finding that plaintiffs lacked equitable jurisdiction for their UCL claim in federal court."  *Albanese*, 2026 WL 970228, at *3.  But in *Clevenger*, the sole claim was a request for restitution and injunctive relief under the UCL; there were no claims over which the court had equitable jurisdiction.  *Clevenger*, 2023 WL 2390630, at *1.  Thus, *Clevenger* does not support remand where a court lacks equitable jurisdiction over only one remedy in a case.  Third, the central predicate of *Albanese*—that absent remand, the plaintiff would be unable to pursue a public injunction—does not apply here, where Plaintiff admits that if his claims seeking a public injunction are dismissed for lack of jurisdiction, he could refile them in state court.  Dkt. No. 22 at 4 n.1.

Nor has Plaintiff shown that he is entitled to relief under the *Colorado River* abstention doctrine, which is "available only in situations involving the *contemporaneous* exercise of concurrent jurisdictions."  *Kirkbride v. Cont'l Cas. Co.*, 933 F.2d 729, 734 (9th Cir. 1991) (finding *Colorado River* abstention inapplicable where defendant removed the entire case, leaving no concurrent state proceeding).  Plaintiff's request for a partial remand seeks to create a parallel state proceeding that does not otherwise exist, creating the very problem *Colorado River* abstention is intended to redress.

In sum, even assuming that Plaintiff cannot receive part or all of his requested injunctive relief in federal court, the Court has jurisdiction to adjudicate

6

his claims, and Plaintiff has not shown that remand is permitted, much less required.  Plaintiff's motion to remand is therefore denied.  His request for attorneys' fees and costs is also denied, as Defendants did not lack "an objectively reasonable basis for seeking removal."  *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).

## III.

The Court turns next to Defendants' motion to dismiss.  Defendants argue that Plaintiff's claims (except those under the PSLCRA) are predicated on time-barred conduct by AIOC and otherwise do not state a claim for relief.  Dkt. No. 13. Defendants also argue that Plaintiff lacks Article III standing to seek a public injunction and that the requested injunction is overbroad.

### A.

To survive a Rule 12(b)(6) motion, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim has "facial plausibility" if the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  All well-pleaded factual allegations must be accepted as true, but a court need not credit "[t]hreadbare recitals of the elements of a cause of action" or "a legal conclusion couched as a factual allegation."  *Id.* (cleaned up).

### B.

Defendants move to dismiss Plaintiff's claims for declaratory judgment and violations of the SBBR, Rosenthal Act, CCRAA, and UCL.[3]  The Court addresses each challenged cause of action in turn.

### 1.

Plaintiff seeks a declaratory judgment that his loans are unenforceable—and therefore not subject to collection—because they were the result of fraud by AIOC. Compl. ¶¶ 163–68, 233–38.  He asks the Court to adjudicate the validity of this fraud defense and argues that the defense is applicable against Defendants pursuant

---

[3] For all claims except violation of the UCL, the complaint alleges two separate causes of action addressing different loans, but the parties address them together without distinction and the Court does the same.

to the Holder Rule, which provides that the holder of consumer credit contracts is "subject to all claims and defenses which the debtor could assert against the seller" of the goods and services. 16 C.F.R. § 433.2. Defendants respond that Plaintiff misconstrues the scope of the Holder Rule and that his fraud-based claims are, in any event, time-barred because the alleged fraud occurred more than 15 years ago.[4]

It is undisputed that the Holder Rule may be raised as a defense to a collections suit but does not give rise to an affirmative private right of action. *E.g.*, *Choudhuri v. Specialized Loan Servicing*, No. 22-CV-06993-JST, 2023 WL 6277327, at *4 (N.D. Cal. Sept. 26, 2023) (no private right of action). Defendants argue that Plaintiff is improperly attempting to use the Holder Rule offensively. Defendants have not shown, however, that Plaintiff's reliance on the Holder Rule in his claims for declaratory relief—which does not seek damages—is barred. The Declaratory Judgment Act, which is applicable to removed cases involving requests for declaratory relief, *Golden Eagle Ins. Co. v. Travelers Companies*, 103 F.3d 750, 753 (9th Cir. 1996) (cleaned up), authorizes courts to declare the rights of interested parties in "a case of actual controversy," 28 U.S.C. § 2201. For such a claim to be justiciable, there must exist "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Md. Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941).

Defendants contend that the loans are fully enforceable. Plaintiff disagrees, arguing that AIOC's fraud makes the debt unenforceable. Defendants have rejected that argument, declining to discharge the loans and allegedly engaging in continued harassing collection efforts. Where there is a sufficiently immediate

---

[4] Defendants raise these arguments more broadly against Plaintiff's claims as a whole, treating the action as principally premised on the Holder Rule. They acknowledge, however, that "[t]o the limited extent Plaintiff alleges claims based on [Defendants'] independent servicing conduct—such as purportedly unfair or abusive collection practices—rather than AIOC's alleged misconduct, Plaintiff's misapplication of the Holder Rule does not eliminate those claims as a matter of law." Dkt. No. 13 at 10 n.3. The claims for declaratory relief are therefore the only claims that depend entirely on the Holder Rule, and the Court limits its analysis of the rule to those claims because it would not otherwise provide a basis to dismiss Plaintiff's remaining claims. *See Franklin v. Midwest Recovery Sys., LLC*, No. 8:18-CV-02085-JLS, 2020 WL 3213676, at *1 (C.D. Cal. Mar. 9, 2020) (explaining that Rule 12(b)(6) "does not provide a mechanism for dismissing only a portion of a claim") (collecting cases).

controversy, "[a] potential defendant may preempt a suit by a potential plaintiff—the latter of whom could sue pursuant to an independent cause of action—and seek a declaration that the potential plaintiff's claim would fail."  *City of Reno v. Netflix, Inc.*, 52 F.4th 874, 879 (9th Cir. 2022).  Here, Plaintiff would raise AIOC's misconduct as a defense to a collection action by Defendants, which Defendants concede would be a permissible use of the Holder Rule.  *See* Dkt. No. 13 at 6 (agreeing that the Holder Rule may be used to defend against a collections lawsuit).  Defendants have not shown that Plaintiff must stop making payments and subject himself to a lawsuit to obtain an adjudication of his obligation to pay, particularly where Defendants allegedly continue to attempt to collect the debt.

Nor have Defendants shown that the declaratory judgment claim is untimely.  A declaratory judgment claim is subject to the same statute of limitations as the underlying cause of action that the declaration would adjudicate.  *Levald, Inc. v. City of Palm Desert*, 998 F.2d 680, 688 (9th Cir. 1993); *see also, e.g.*, *Int'l Ass'n of Machinists & Aerospace Workers v. Tenn. Valley Auth.*, 108 F.3d 658, 668 (6th Cir. 1997) ("Because a declaratory judgment action is a procedural device used to vindicate substantive rights, it is time-barred only if relief on a direct claim would also be barred.").  Plaintiff's requested declaratory judgment seeks adjudication of a defense to Defendants' anticipated enforcement action, and Defendants have not shown that such a defense would be barred by the statute of limitations if they filed suit.

Accordingly, Defendants' motion to dismiss the declaratory judgment claims is denied.

2.

Plaintiff brings claims under the SBBR based on four types of alleged misconduct:  (1) failing to respond to his qualified written requests; (2) making harassing collection calls; (3) misrepresenting that AIOC's alleged fraud did not affect his loan obligations; and (4) offering a "sham" discharge process for school misconduct.

Defendants move to dismiss these claims, arguing that they are time-barred and improperly premised on AIOC's fraud, which Plaintiff discovered in 2010.  But Defendants concede that the claims are not barred to the extent they arise from their own independent servicing conduct.  Dkt. No. 13 at 10 n.3.  This concession is largely dispositive.  Plaintiff's SBBR claims—including allegations that Defendants made harassing collection calls, failed to respond to information requests, misrepresented his loan obligations, and offered a sham discharge

process—are based on Defendants' conduct and grounded in the SBBR's prohibition on "abusive acts or practices" by loan servicers that do not depend on the Holder Rule. *See* Cal. Civ. Code § 1788.101(a)(1)–(2)(A) (prohibiting acts that "[m]aterially interfere[] with the ability of a borrower to understand a term or condition of a student loan"); *id.* at § 1788.101(b)(1)–(2) (prohibiting loan servicers from "employ[ing] a scheme, device, or artifice to defraud or mislead a borrower" or "misrepresent[ing] or omit[ting] material information"); *id.* at § 1788.102(t)(1) (requiring a servicer to respond to qualified written requests). Because Defendants do not meaningfully challenge the sufficiency or timeliness of these claims, their motion to dismiss the SBBR claims is denied.[5]

3.

Plaintiff asserts claims under the Rosenthal Act based on Defendants' collection call activities and alleged misrepresentation about the legal status of the debt—i.e., representations that AIOC's fraud does not affect Plaintiff's repayment obligations. Compl. ¶¶ 136–47, 207–18. Defendants argue that the harassment allegations are too conclusory because the complaint does not provide sufficient details about the time and substance of the calls and that Defendants' disagreement with Plaintiff about whether his loans are enforceable does not qualify as a misrepresentation.

The Rosenthal Act prohibits repeated or continuous telephone calls that annoy or harass, Cal. Civ. Code § 1788.11(d)–(e), and prohibits third-party contacts for purposes other than obtaining location information, *id.* §§ 1788.12, 1788.17 (incorporating federal prohibitions). Plaintiff's allegations that he received more than 45 calls in a month, that Defendant has called him "multiple times per day for days on end," and that Defendants disclosed the nature of his debt to his employer are sufficient at the pleading stage. Compl. ¶¶ 90–93; *see Alborzian v. JPMorgan Chase Bank, N.A.*, 235 Cal. App. 4th 29, 38 (2015) ("The making of frequent calls itself can constitute actionable harassment under the Rosenthal Act."); *Bruner v. AllianceOne Receivables Mgmt., Inc.*, No. 15-CV-9726, 2017 WL 770993, at *3 (N.D. Ill. Feb. 28, 2017) (denying motion to dismiss

---

[5] In their reply, Defendants for the first time argue that the qualified written request allegations are insufficiently specific to state a claim. The Court need not consider arguments first raised in a reply. *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007). And even if correct, Defendants' argument would not dispose of the full SBBR claim. *Cf. Franklin*, 2020 WL 3213676, at *1 (Rule 12(b)(6) does not permit dismissal of only a portion of a claim).

claims under the federal provisions incorporated into the Rosenthal Act where plaintiff alleged eleven calls over six weeks); *Carr v. NCO Fin. Sys., Inc.*, No. 11-CV-2050, 2011 WL 6371899, at *3 (E.D. Pa. Dec. 20, 2011) (same for nine calls in 30 days). Because Plaintiff states a claim under the Act under at least one theory, the Court need not consider all theories in the cause of action at this stage. *Franklin*, 2020 WL 3213676, at *1. Accordingly, Defendants' motion to dismiss the Rosenthal Act claims is denied.

4.

Plaintiff alleges that Defendants violated the CCRAA by reporting his loans to consumer reporting agencies without disclosing that he disputed the enforceability of the debt or that the loans were induced by fraud. Compl. ¶¶ 148–62, 219–32. He alleges that he submitted multiple discharge applications, sent correspondence disputing the loans, and filed complaints, thereby putting Defendants on notice of a bona fide dispute that Defendants failed to report.

The parties' briefing on Plaintiff's CCRAA claims raises issues that have not been adequately addressed. Defendants' motion argues that the claim fails "because Defendants had no statutory duty to report his loan as 'disputed' based solely on his submission, and subsequent denial, of a school-misconduct discharge application." Dkt. No. 13 at 13. The motion notes in passing the allegation that Defendants failed to disclose that they knew the loans were procured by fraud but does not address why that allegation does not state a claim separate from the issue of whether Defendants had an obligation to report the loan as disputed. In opposition, Plaintiff for the first time identified as the basis for his claims two specific provisions of the CCRAA not referenced in his complaint: Cal. Civ. Code § 1785.25(a), which prohibits a furnisher from reporting information it knows to be incomplete or inaccurate, and § 1785.25(c), which requires a furnisher to include dispute notations. Responding to Defendants' framing of the issue in their motion, Plaintiff focused only on whether Defendants had a duty to report his dispute of the debt.

In its tentative order, the Court raised preemption, which the parties had not addressed. As noted in the tentative order, the Ninth Circuit has held that the prohibition on furnishing incomplete or inaccurate information is the only substantive CCRAA furnisher provision that is not preempted by the Fair Credit Reporting Act (FCRA). *Carvalho v. Equifax Info. Servs.*, LLC, 629 F.3d 876, 888–89 (9th Cir. 2010); *see also Tuck v. Portfolio Recovery Assocs.*, L.L.C., No. 19-CV-1270, 2019 WL 6497758, at *2 (S.D. Cal. Dec. 3, 2019) (dismissing claims

11

under § 1785.25(c) as preempted by FCRA). And courts have concluded that claims about a furnisher's failure to note disputes fall exclusively under § 1785.25(c) and cannot be raised under § 1785.25(a) as an end-run around FCRA's preemption of the dispute-notice requirements in subsection (c). *See Wang v. Asset Acceptance, LLC*, 681 F. Supp. 2d 1143, 1148–9 (N.D. Cal. 2010) (holding that the general obligation in § 1785.25(a) cannot have been intended to include the dispute-notation obligation that § 1785.25(c) separately and specifically imposes); *Faircloth v. AR Res., Inc.*, No. 19-CV-05830, 2020 WL 2747781, at *5–7 (N.D. Cal. May 27, 2020) (following *Wang*); *Marseglia v. JP Morgan Chase Bank*, No. 09-CV-2857, 2011 WL 13134334 (S.D. Cal. Aug. 3, 2011) (same). Because the parties had not addressed this issue, the Court in its tentative order gave Plaintiff "the opportunity at the hearing to identify authority showing that his CCRAA claims are not preempted." At the hearing, Plaintiff conceded that a claim under § 1785.25(c) is preempted but urged the Court to reject *Wang*, *Marseglia*, and *Faircloth* and hold instead that a claim for failure to report a dispute may be brought under § 1785.25(a) even though the obligation to report the dispute under § 1785.25(c) is preempted. When asked for supporting authority, Plaintiff identified only *Gorman v. Wolpoff & Abramson, LLP*, the foundational Ninth Circuit case holding that a private right of action under § 1785.25(a) is not preempted. 584 F.3d 1147, 1172 (9th Cir. 2009). *Gorman* does not address the scope of the claims that may brought under § 1785.25(a), and both *Wang* and *Faircloth* relied on *Gorman* and do not appear to be in tension with it.

While the Court has doubts about Plaintiff's ability to bring a claim for failure to note a dispute under § 1785.25(a), it declines to adjudicate that issue on this record, where Plaintiff has not had a full opportunity to brief it, because Defendants' motion does not meaningfully address Plaintiff's alternative theory of CCRAA liability—namely, the failure to report that the loans were induced by fraud. *See, e.g.*, Compl. ¶ 153 ("Defendants furnished information indicating that Mr. Ramos is undisputedly obligated to pay Loan 4635 even though Defendants knew the loan was induced through fraud[.]"). At the hearing, Plaintiff invoked this allegation as an independent basis for CCRAA liability. Defendants have made no attempt to show that, accepting as true the allegation that they knew the loans were procured by fraud, their failure to report that fact did not make their reports inaccurate or incomplete under § 1785.25(a). Accordingly, they have not shown that they are entitled to dismissal of Plaintiff's CCRAA claims.

5.

Plaintiff also asserts a UCL claim based on the same alleged servicing and collection misconduct, alleging that Defendants engaged in unfair, deceptive, and unlawful business practices. Compl. ¶¶ 239–52. He seeks restitution and injunctive relief. Defendants move to dismiss this claim, arguing that Plaintiff has not sufficiently alleged economic injury and that any injury was caused by AIOC, not Defendants.

A plaintiff has standing under the UCL only if he has "suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. In their motion, Defendants note that "Plaintiff alleges his economic injury includes 'payments made, credit damage suffered and credit opportunities lost as a result, *ongoing liability for the alleged debt that should have been cancelled and is unenforceable*, and postage paid to dispute the alleged debt and to request information that should have been provided.'" Dkt. No. 13 at 15 (quoting Compl. ¶ 250). But Defendants address only some of the alleged injuries—primarily Plaintiff's continued liability on the debt, which they argue stems from Plaintiff's agreement with AIOC rather than Defendants' conduct. The motion does not meaningfully address the other alleged harms, however, including credit damage, lost credit opportunities, and expenses incurred in disputing the debt. At least at the pleading stage, those alleged injuries appear potentially cognizable and plausibly attributable to Defendants' service and collection conduct. *See, e.g.*, *Fernandez v. Progressive Mgmt. Sys.*, No. 3:21-CV-00841, 2022 WL 2541272, at *4 (S.D. Cal. July 7, 2022) (collecting cases for the proposition that credit damage is a cognizable economic injury under the UCL).

The Court has questions about the adequacy of Plaintiff's allegations of economic harm, which are largely conclusory. Because Defendants have not challenged all the asserted harms, however, they have not shown on this record that they are entitled to dismissal of Plaintiff's UCL claim.

6.

Finally, Defendants challenge Plaintiff's request for a "public injunction." But the motion—though not styled as a Rule 12(b)(1) challenge—conflates Article III standing with arguments about the permissible scope of equitable jurisdiction. Defendants principally argue that the requested injunction is overbroad, yet they cite no authority suggesting that the precise scope of injunctive relief must be resolved at the pleading stage. Nor have they shown that Plaintiff could not obtain at least some narrower injunctive relief tied to his alleged injuries, such as relief

13

barring further harassing collection calls.  Indeed, their overbreadth argument implicitly recognizes that some more tailored relief may be appropriate.  On this record, Defendants have not shown that Plaintiff's request for injunctive relief must be dismissed.

IV.

For the foregoing reasons, Plaintiff's motion to remand and Defendants' motion to dismiss are denied.  Defendants shall answer the complaint no later than June 8, 2026.

Date: May 29, 2026

_____
                 Stanley Blumenfeld, Jr.
                 United States District Judge

14